Case 3:14-cv-02078-VC   Document 1-1   Filed 05/06/14   Page 1 of 6

CV 14 2078

(PR) DMR

RECEIVED
MAY 06 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CRUZ

BEFORE THE HONORABLE ARIADNE J. SYMONS, JUDGE

THE PEOPLE OF THE
STATE OF CALIFORNIA,

        Plaintiff,

vs.

    No. F22700
        M66466

KYLE ROBERT CHEZA,

        Defendant.

---

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

May 18, 2012

**APPEARANCES**

| | |
|---|---|
| **For the People:** | REBEKAH YOUNG<br>Assistant District Attorney |
| **For the Defendant:** | ELIZABETH CABALLERO<br>Deputy Alternate Public Defender |
| **Probation Department:** | DEBORAH VOITH<br>Deputy Probation Officer |
| Official Court Reporter: | TANIS J. O'CONNOR<br>CSR No. 7553 |

```
 1  Santa Cruz, California                    May 18, 2012
 2                      P R O C E E D I N G S
 3                            --oOo--
 4       THE COURT:  Who is handling the Cheza matter,
 5  please?  Kyle Robert Cheza.
 6       MS. YOUNG:  Rebekah Young for the People.
 7       THE COURT:  And who is the defense attorney in
 8  this matter?
 9       MS. YOUNG:  It's Ms. Caballero.
10       THE COURT:  Is this a resolution or a go,
11  please?
12       MS. YOUNG:  I believe it's going to be a go.
13          (Unrelated proceedings conducted.)
14       THE COURT:  All right.  Ms. Caballero, the Cheza
15  matter, are we ready to have that called, please?
16       MS. CABALLERO:  Your Honor, I believe that would
17  be a case that would benefit from some discussions with
18  the Court, please.
19       THE COURT:  Thank you.
20       MS. CABALLERO:  Thank you.
21          (Unrelated proceedings conducted.)
22       THE COURT:  Ms. Caballero, are we ready on the
23  Cheza matter?
24       MS. CABALLERO:  We are, Your Honor.  Page 3.
25       THE COURT:  Good morning, Mr. Cheza.
26       THE DEFENDANT:  Good morning, Your Honor.
```

1  THE COURT: How are you, sir?

2  THE DEFENDANT: When this is all said and done,
3  if you give me a moment, I'll let you know where I'm at
4  with everything.

5  THE COURT: All right, sir.

6  Ms. Caballero.

7  THE DEFENDANT: I'd like to be able to speak,
8  with a couple things put on record.

9  THE COURT: Just one moment. We'll start with
10 your attorney first.

11 What is the proposal this morning, ma'am?

12 MS. CABALLERO: Your Honor, the proposal this
13 morning is that Mr. Cheza is going to plead, in M66466, to
14 Count 2; a dismissal of Count 1, in light of the plea.

15 In F22700, the district attorney is going to
16 reduce the charge to an amended charge of, I believe,
17 602.5 --

18 MS. YOUNG: Correct.

19 MS. CABALLERO: -- misdemeanor, for --

20 THE COURT: Which is trespass.

21 MS. YOUNG: Your Honor, it's 602.5 sub (b),
22 which is the aggravated trespass we had discussed.

23 THE COURT: All right.

24 MS. CABALLERO: For a suspended sentence, Your
25 Honor, of 365 days. I'm not sure which case the Court
26 wanted to put the suspended sentence on.

1    Mr. Cheza has credit for 14 -- I'm sorry --
2 15 days on F22700, and I believe one day on M66466; with
3 Mr. Cheza being courtesy housed at the county jail,
4 releasable to his father, Dan Cheza.
5    THE DEFENDANT: Denny.
6    MS. CABALLERO: Danny {sic} Cheza, who will be
7 en route soon.
8    And for Mr. Cheza to remain in the state of
9 Pennsylvania for a minimum of one year, at which point the
10 suspended sentence will -- will terminate, as well as
11 probation, on F18955.
12    THE COURT: Mr. Cheza, did you understand all of
13 that?
14    THE DEFENDANT: Um. I'm a little unclear -- I
15 want to make sure that -- I was told that I'm not
16 necessarily put to Pennsylvania alone, because I have a
17 lot of family throughout Michigan, Ohio, Pennsylvania, New
18 York, on into the Carolinas, where over the next
19 12 months, work will deteeter {sic}, depending on
20 everything -- pretty much if it goes -- my dad and my
21 probation officer are going to be keeping in touch, and I
22 just want to make sure that -- I mean, my mom lives in
23 Ohio, and what's going down right now was the last thing I
24 expected to happen, but as much as I got a chip on my
25 shoulder, it's going to be a good thing for me, and, um,
26 I'm going to come back rolling thunder. You know what I

1  mean?  But I -- I just want to make sure that I'm allowed
2  to be in Ohio and -- and surrounding area, which I thought
3  was okay, but pretty much they don't want me crossing the
4  Continental Divide right now, is what I'm getting.
5           THE COURT:  Essentially, I want you to spend the
6  first year with your dad, because he's got some good
7  support for you there.  It will help you get up on your
8  feet.  If you'd like to go visit mum, you get permission
9  from probation.  All of it can be done over the telephone,
10 but I don't want you just traveling around without being
11 in contact with people.
12          THE DEFENDANT:  The part of the country I'm
13 going to be in, three states border each other.  It's like
14 going from Watsonville to here.  I mean, they're real
15 close.
16          So that's why I wanted to get that clarified
17 right now, that my mom lives in Ohio.  My step-dad owns
18 property there.  He's got a hobby shop.  I'm probably
19 going to be doing work with my dad.  There are some houses
20 there.  I'll --
21          THE COURT:  You'll to have keep in touch, and it
22 will have to be approved.  So if probation calls your dad,
23 and your father says, "I have no idea where my son is" --
24          THE DEFENDANT:  Right.  Then I'm in violation.
25 I understand that.
26          THE COURT:  Okay.  I think we're on the same

1  page.

2        THE DEFENDANT:  I'm all clear with that.

3        And two more things:  Um.  When this year is up,
4  this time next year, I was told that my probation is
5  terminated.

6        THE COURT:  Going to terminate everything.  All
7  done.

8        THE DEFENDANT:  And at that point my flag is
9  free to fly right back onto the West Coast?

10        THE COURT:  I have to tell you, we really don't
11  want you to come back to Santa Cruz.  It's not --

12        THE DEFENDANT:  I'll be back.

13        THE COURT:  -- a good environment for you.  You
14  get in a lot of trouble here.

15        THE DEFENDANT:  I got 22 years invested in here,
16  and as much as there are some people that say they don't
17  want me around, I got no problems with them.  They can
18  keep their own space, and I'll keep mine.  You know,
19  bygones are bygones.

20        There are some charges put against me here that
21  were -- accusations that were made that were wrong, and
22  I've done a little homework, and if I really wanted to, I
23  could probably further this with a lawsuit, but I'm
24  willing to say because I made the wrong choice myself to
25  go somewhere where I thought I had permission and didn't,
26  that I'm willing to let all that go.  You know what I