
13D Fed. Prac. & Proc. Juris. § 3573.3 (3d ed.)

*[handwritten margin note: Please note sections underlined]*

Federal Practice & Procedure
Database updated April 2013

Jurisdiction And Related Matters
The Late Charles Alan Wright[FNa192], Arthur R. Miller[FNa193], Edward H Cooper[FNa194], Vikram David Amar[FNa195], Richard D. Freer[FNa196], Helen Hershkoff[FNa197], Joan E. Steinman [FNa198], Catherine T. Struve [FNa199]

Chapter 2. Federal Question Jurisdiction
Richard D. Freer[FNa457]

B. Particular Grants of Jurisdiction

Link to Monthly Supplemental Service

### § 3573.3 Section 1983 Actions—Defenses: Official Immunity and Res Judicata

   Many of the defenses available in actions under 42 U.S.C.A. § 1983 and other civil rights statutes are similar to those in civil actions generally. Some of these—including the statute of limitations and abatement on death—are discussed in the next section, which focuses on procedural matters.[FN1] The important statutory requirement that prisoners exhaust administrative remedies before filing suit under § 1983—imposed by Congress in 1996—also is discussed there. The present section focuses on two defenses to which the courts have paid especial attention through the years: official immunity and preclusion; "preclusion" is used here generically, and includes both claim and issue preclusion (or, by their older terms, res judicata and collateral estoppel).
   Courts in the United States long recognized some form of common law immunity for government officials, particularly judges.[FN2] These protections from litigation have been referred to variously as "official" or "personal" immunity. The policy underpinnings are clear: immunity is accorded a government actor to protect him from fearing litigation as a result of some official act. This protection enables the official to act with

*[handwritten margin note: (Violates Const Rule, Incorrect Para "3")]*

appropriate boldness.[FN3]

Congress enacted § 1983 against this background. The statute makes no reference to immunity. In Tenney v. Brandhove, the Supreme Court simply refused to believe that Congress intended to override the long historical recognition of immunity without some express statement in the statute. [FN4] Accordingly, the Court has recognized immunity in § 1983 cases. Indeed, it has worked out a rather elaborate set of rules on immunity for government actors. In doing so, the Court has looked to the common law, the Constitution, federal statutes, and history, and has weighed concerns of public policy, as illuminated by our history and the structure of our government.[FN5]

Before considering the immunity that may apply to various defendants in § 1983 litigation, it is important to make five preliminary observations, which will inform the discussion that follows.

First, this section addresses immunities for both state and federal actors. Of course, as discussed in another section,[FN6] § 1983 addresses only alleged deprivations of federal rights under color of state law, so federal officers generally cannot be sued under § 1983. As also discussed in that section, however, federal officers can be sued under a common law theory—referred to as a "Bivens claim"—that permits suit against those who deprive civil rights under color of federal law.[FN7] The Court has established that immunity doctrine for § 1983 cases and for Bivens cases are co-extensive. [FN8] Thus, until the Court draws a line it has not yet drawn, one should assume that the immunity discussed applies to state actors in cases under § 1983 and to federal actors sued under the Bivens theory.

Second, the common law immunity addressed here constitutes a right not to be sued. It is not merely an immunity from *liability*. It is an immunity from *suit*. Accordingly, courts have attempted to posit rules of immunity that can be applied at the outset of litigation, so if immunity attaches, the case can be dismissed. These immunity rules should be applicable without requiring adjudication of the underlying merits of the case; if the defendant can only determine whether he is immune by litigating the case itself, the immunity will not spare him from what it is supposed to spare him—litigation.[FN9]

Third, generally, the immunity dealt with is immunity from a suit for damages. Ordinarily, subject to a couple of exceptions to be seen below, a person who is immune from an action for damages will not be immune from a suit for equitable relief, such as an injunction or declaratory judgment.

Fourth, immunity is usually available only to governmental actors. As discussed elsewhere,[FN10] a private person may be found to have acted under color of state law when he acted in concert with a government officer in depriving the plaintiff of a federal right. In general, however, **immunity** is "**not** transferable to private parties."[FN11]

Fifth, there are two types of **immunity**: "absolute" and "qualified" (which is also called "good faith" **immunity**). As the name implies, absolute **immunity** protects the defendant from suit for damages without exception. As will be seen, absolute **immunity** is available to only a limited number of actors—**judges**, jurors, witnesses, prosecutors, legislators, and the President of the United States.[FN12] And, importantly, it attaches to these persons only when they are performing particular functions; thus, absolute **immunity** protects particular *functions* by particular persons, and **not** the persons themselves.[FN13]

If on the facts of a specific case one of these actors is **not** entitled to absolute **immunity** (because he was **not** performing a function entitling him to absolute **immunity**), he may then attempt to claim qualified **immunity**. In addition, the vast majority of government actors sued under § 1983—including police officers—are never entitled to absolute **immunity**, and thus can claim only the lesser protection of qualified **immunity**.

Cases involving qualified **immunity** can be difficult, because the question of whether the defendant acted in good faith is intimately connected with whether the right allegedly violated was well-established at the time the claim arose. Accordingly, the court must often address cutting-edge questions of constitutional and statutory law. As between the two types of immunity, there is a presumption that a defendant is entitled only to qualified immunity. One seeking absolute immunity must demonstrate his entitlement to it.[FN14]

With these five basic observations in mind, the discussion can now turn to individual types of government actors and the immunities they might be able to claim.

Judges are absolutely immune from suit for damages for acts taken in their judicial capacity. This immunity attaches even if the judge was wrong or unreasonable or even corrupt—just so the judge was performing a judicial function when he acted. This extraordinary protection shields the judicial process, which would be devastated if judges could face litigative reprisals for their rulings.

The leading example is Sparkman.[FN15] In that case, a mother, concerned that her minor daughter might become pregnant, petitioned a state court of general jurisdiction to order her daughter sterilized by tubal ligation. A judge granted the order without a hearing and without notice to the daughter. Two years later, after the daughter married and discovered that she could not get pregnant, she learned of the sterilization. She and her husband sued several persons, including the judge who ordered the sterilization. Although the exercise of the judge's authority was flawed by procedural errors[FN16]—indeed, it plainly violated due process—his act was "judicial" and therefore protected.

The act was judicial even though no state statute permitted a parent to

seek, or a judge to order, sterilization on the facts of the case. According to the majority opinion in Stump, the "scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"[FN17] The Court noted that the judge's court was one of general jurisdiction, and by statute had original jurisdiction "in all cases at law and equity whatsoever." Accordingly, the Court noted, the significant point was not that no state law permitted the judge's action, but that no state law prohibited the judge from ordering the sterilization.[FN18]

Obviously, the scope of a "judicial act" is broad. It is not, however, without limit. Relying on language quoted in the preceding paragraph from the Stump case, courts generally conclude that an act may be considered judicial unless it is undertaken with a "clear absence of jurisdiction."[FN19] For example, when a judge of one geographic area enters an order purporting to assume jurisdiction outside that area, he has stepped beyond the judicial role and forfeits immunity.[FN20] Cases involving claims of absolute immunity for acts taken by judges in a judicial capacity are set forth in the margin.[FN21]

As noted above, however, absolute immunity generally is from suit for damages, and not for actions for equitable relief. The Supreme Court reiterated this fact in 1984, in a case in which it issued holdings on two matters that Congress ultimately abrogated. In Pulliam v. Allen,[FN22] the Court held that judges are not immune from suits for injunctive relief, even for acts taken in a judicial capacity.[FN23] It also held that the judge in such a case could be liable for attorney's fees to the prevailing party under 42 U.S.C.A. § 1988.[FN24]

Congress effectively overruled the holdings of Pulliam v. Allen on both points. The Federal Courts Improvement Act of 1996[FN25] amended § 1988 to provide that a judge acting in a judicial capacity "shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."[FN26] It also amended § 1983 to provide: "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall **not** be granted unless a declaratory decree was violated or declaratory relief was unavailable."[FN27]

Judicial officers can act in non-judicial capacities. When they do, absolute judicial **immunity** will **not** attach. For example, the decision of a state-court **judge** to demote and dismiss a probation officer was an administrative, rather than judicial, act, and was **not** protected by absolute **immunity**. The **judge** was thus subject to a damages claim for unlawful discrimination, and could attempt to invoke only qualified **immunity**.[FN28] Similarly, if the

challenged action was undertaken in the course of a **judge's** rulemaking function, **immunity** would be assessed by the standards applied to legislators.[FN29] And if the **judge** was exercising enforcement authority, **immunity** would be assessed by the standards applied to prosecutors and law enforcement personnel.[FN30]

Jurors and witnesses are absolutely **immune** from actions for damages for claims arising from their actions as such.[FN31] This **immunity** is obviously critical to enable them to act without fear of liability for their participation in the judicial system. Although in theory these actors would **not** be **immune** from suit for equitable relief, it is difficult to conceive of a case in which injunctive or declaratory relief against a juror or a witness would be appropriate.

Prosecutors are members of the executive branch of government and, as such, do not act in a judicial capacity. Nonetheless, the Court has characterized prosecutors as "quasi-judicial" officers who are absolutely immune from suit for damages.[FN32] The immunity attaches, however, only when prosecutors perform functions traditionally performed by advocates.[FN33] It is only when performing such duties that they partake of the judicial process sufficiently to justify absolute immunity. Thus, one must be careful to assess various acts of prosecutors—some may be entitled to absolute immunity and some not, as shown by cases in the margin. [FN34] Prosecutors are not immune, however, from suit for equitable relief, even for acts performed as advocates.[FN35]

Defense counsel appointed by the court are not immune from state malpractice suits,[FN36] but may not be held liable in a § 1983 action because they do not act under color of state law.[FN37] Court reporters are not absolutely immune from damages liability for failure to produce a transcript of a federal criminal trial.[FN38]

Both federal and state legislators are absolutely immune from suit for actions taken "within the sphere of the legitimate legislative activity."[FN39] Unlike most other examples of absolute immunity, legislators are immune not only from actions for damages but also from suits for equitable relief. [FN40] This immunity is based upon the Speech and Debate Clause of the Constitution[FN41] and protects legislators from suit for legislation that turns out to be unconstitutional and for anything said in debate concerning the legislation.[FN42]

This legislative immunity applies to officials who, while not legislators, are engaged in a legislative function.[FN43] It also applies to local officials performing legislative functions.[FN44] Absolute immunity does not apply, however, for employees of a legislative body.[FN45] At best, they may seek qualified immunity.

The President of the United States is absolutely immune from suits for damages predicated on his official acts, and continues to be protected by

this immunity even after he has left office.[FN46] On the other hand, a sitting President is not immune from a suit for damages based upon conduct that pre-dated his presidency. Thus President Clinton was not immune from a sexual harassment suit brought during his incumbency but based upon earlier alleged conduct.[FN47] Absolute immunity applies also to executive officers who are performing prosecutorial or adjudicative functions.[FN48]

Most § 1983 cases are brought against officials of the executive branch of state or federal government—people such as governors, mayors, and law enforcement officers—who are not entitled to absolute immunity. And, as discussed above, there are situations in which persons otherwise entitled to absolute immunity cannot avail themselves of it because their actions in the particular case do not fall within its protective sphere. In all such cases, the defendant can—at best—attempt to invoke qualified immunity.



The Court has embraced qualified immunity in recognition that a government actor should be shielded from liability if he acted in good faith. Accordingly, as noted above, qualified immunity is also known as "good faith immunity." As the Court explained in the Harlow v. Fitzgerald: "government officials performing discretionary functions generally are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[FN49]

The inquiry into good faith, then, is whether the defendant should have known that what he did violated some right of the plaintiff's. This inquiry is objective, not subjective. The question is not whether this particular defendant actually knew whether what he did violated the plaintiff's rights. Rather, the question is whether a reasonable official would have known that his activity violated a right of the plaintiff. The crux of whether the one "would have known" of a violation is whether the violation was "clearly established" in the law. More specifically, the law must have been clearly established at the time of the alleged misconduct.[FN50]

This does not necessarily mean that there must be case law specifically holding that the very conduct at issue in the case was wrongful. For example, notwithstanding the lack of case law specifically addressing a claim that sexual harassment in the classroom constituted a deprivation of equal protection, clear authority concerning sexual harassment in the workplace as a denial of equal protection would place a reasonable teacher on notice at the time of the events that his alleged harassment constituted a deprivation of equal protection.[FN51]

Qualified immunity is thought necessary to permit government actors to exercise their discretion boldly. If they were liable every time their act caused a legal deprivation, officers would be hesitant to do anything "close to the line" of legality. With good faith immunity, the officers can approach that line more readily. Indeed, they can even cross the line and commit an



υ

*[handwritten margin note: "They knew of"]*

unconstitutional act without liability for damages if a reasonable official—based upon the state of the law at the time—would not have known that the act constituted a violation.

A helpful example is Saucier v. Katz,[FN52] in which the Court also clarified the order in which a court should address issues regarding a claim of qualified immunity. There, a demonstrator approached a fence that separated a crowd from speakers at a public event. One of the speakers was the Vice President, and military police officers had been warned that demonstrators might appear. When the demonstrator approached the fence and unfurled a banner, two officers grabbed him and rushed him—half walking and half dragging—from the area. The officers then allegedly shoved the demonstrator into a police van, causing him to fall to the floor of the van.

The demonstrator sued one of the officers, alleging that the officer's use of "excessive force" violated his Fourth Amendment rights. The Court in Saucier laid out a two-step test for assessing qualified immunity. First, the threshold question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[FN53] If the answer is no, the plaintiff has failed to state an actionable wrong, and the defendant is entitled to summary judgment. If the answer is yes, "the next, sequential step is to ask whether the right was clearly established."[FN54] "This inquiry," the Court said, "it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."[FN55]

Before Saucier evidently made this two-step approach mandatory, the Court had said that it was the "better approach."[FN56] There has been some criticism of this two-step approach in Saucier.[FN57] Indeed, the approach—mandating consideration of whether a constitutional violation has occurred—seems contrary to the traditional view that courts should avoid constitutional questions when possible. In many cases, the constitutional issue may be difficult and the question of immunity easy. Yet even in such cases Saucier will require assessment of the constitutional issue. Until the Court clearly indicates that the Saucier two-step approach is not mandated, however, lower courts consider it mandatory.[FN58]

The Court revisited the question only eight years later. In Pearson v. Callahan,[FN58.1] the Court admitted that making the Saucier two-step approach mandatory was a mistake. Accordingly, the lower courts now have discretion as to which of the two factors to address first.[FN58.2] The holding in Pearson is salutary. Now, for example, if it is clear that a constitutional right was not clearly established, the court and parties do not have to waste time and resources determining whether the plaintiff showed a deprivation of that right.[FN58.3]

On the facts of the case in Saucier, the Court noted that it was well

established that the Fourth Amendment bars excessive force, but instructed lower courts that the inquiry must be more detailed—"the dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[FN59]

The Court emphasized that qualified immunity acknowledges that officers may make reasonable mistakes as to the law without losing immunity. As it stated in another case, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[FN60] In Saucier, the Court assumed without deciding that the demonstrator's claim may have stated a violation of the Fourth Amendment. It concluded, however, that on the facts of the case the officer was justified in concluding that the force used was necessary. "A reasonable officer in petitioner's position could have believed that hurrying respondent away from the scene, where the Vice President was speaking and respondent had just approached the fence designed to separate the public from the speakers, was within the bounds of appropriate police responses."[FN61] Accordingly, the officer was entitled to summary judgment based upon qualified immunity.

In terms of pleading, it is clear that qualified immunity is an affirmative defense that must be asserted by the defendant.[FN62] In other words, the plaintiff is not required to allege that the defendant acted in bad faith.

The issue of qualified immunity is often resolved on motion for summary judgment. To rule on the motion, the court must, of course, place the burdens of production and persuasion on the appropriate party. As the Court made clear in Saucier, the initial question is whether facts adduced, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right.[FN63] Plaintiff bears the burden of proving this issue.[FN64] If the plaintiff fails, as noted, the defendant is entitled to summary judgment. There is some authority to the effect that the defendant in such a case is entitled to qualified immunity. The better approach, however, is that the defendant prevails not because of a defense, but because the plaintiff failed to prove an essential element of his claim. [FN65]

If the plaintiff succeeds in demonstrating a violation of a federal right, the court then moves to the second Saucier inquiry—whether the right was clearly established, which implicates the defendant's entitlement to immunity. The Supreme Court has not expressly decided which party carries the burden of proving the applicability of immunity.[FN66] Lower courts have had some difficulty with the issue. Some place the burden on the plaintiff,[FN67] others place it on the defendant,[FN68] and still others place the burden on the defendant to show that his acts fell within the realm of his duties, then shifting the burden to the plaintiff to prove the defendant is not entitled to immunity.[FN69]

The scope of qualified immunity depends in some measure upon the scope of discretion and responsibilities of the office[FN70] and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. Cases explicating and applying the objective good faith standard are set forth in the margin.[FN71]

A municipality has no immunity from liability when it is properly subject to suit under § 1983 and the good faith of the municipality's officers cannot be asserted as a defense.[FN72]

Suppose a private party invokes state replevin, garnishment, or attachment statutes to seize another's property and ultimately does not prevail. Can the person whose property was seized sue under § 1983? Although the Court suggested, without deciding, that a good qualified immunity might be available to private individuals who innocently make use of seemingly valid state laws that are subsequently held to be unconstitutional,[FN73] it subsequently held that there is no qualified immunity for private defendants sued under § 1983 for invoking state seizure provisions.[FN74] And private prison guards, unlike those who work for the government, enjoy no immunity from suit in a § 1983 case.[FN75]

There is no per se rule invalidating agreements in which a criminal defendant releases his right to file a civil rights action in return for the prosecutor's dismissal of pending criminal charges. Such an agreement is enforceable if the defendant has voluntarily entered into the agreement and the prosecutor had a legitimate reason to make the agreement that was directly related to his prosecutorial responsibilities and was independent of his discretion to bring criminal charges.[FN76]

The other defense discussed in this section is preclusion. The discussion may be far shorter than the discussion of immunity, because the Court has forged clear answers in several areas. The question is whether preclusion— either as claim preclusion (res judicata) or issue preclusion (collateral estoppel) ought to apply to bar litigation in a civil rights case.

In Allen v. McCurry,[FN77] decided in 1980, the Court held that the usual rules of issue preclusion apply if issues that were determined in a state-court proceeding are raised in a § 1983 action.[FN78] The Court found it unnecessary to decide whether the normal rules of claim preclusion would also apply in § 1983 litigation.[FN79] Two years later, in Kremer v. Chemical Construction Corporation,[FN80] the Court concluded that Title VII of the Civil Rights Act of 1964 had not repealed the full-faith-and-credit statute, 28 U.S.C.A. § 1738; accordingly, the usual rules of preclusion apply in Title VII actions.[FN81]

In 1984, the Court resolved the question about claim preclusion that had been left open in Allen and in Kremer. In Migra v. Warren City School District,[FN82] the Court squarely held that there is no distinction between claim preclusion and issue preclusion. With regard to each kind of

preclusion, the state judgment must be given the same effect in a § 1983 action as it would have in the courts of the state in which it was rendered. The preclusive effect of state determinations in federal civil rights actions is more fully considered in a later chapter of this Treatise.[FN83]

[FNa192] Charles Alan Wright Chair in Federal Courts, The University of Texas.
-

[FNa193] University Professor, New York University. Formerly Bruce Bromley Professor of Law, Harvard University.
-

[FNa194] Thomas M. Cooley Professor of Law, University of Michigan.
-

[FNa195] Professor of Law, University of California, Hastings College of the Law.
-

[FNa196] Robert Howell Hall Professor of Law, Emory University.
-

[FNa197] Herbert M. and Svetlana Wachtell Professor of Constitutional Law and Civil Liberties, New York University.
-

[FNa198] Distinguished Professor of Law, Chicago-Kent College of Law, Illinois Institute of Technology.
-

[FNa199] Professor of Law, University of Pennsylvania.
-

[FNa457] Robert Howell Hall Professor of Law, Emory University.
-

## [FN1]
**Discussed in the next section**

See § 3573.4.

## [FN2]
**Long recognized immunity**

The year after Congress enacted § 1983, the Supreme Court said that it is "a principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 20 L. Ed. 646, 1871 WL 14737 (1871). Therefore, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 80 U.S. at 351.
The Bradley case involved the disbarment of an defense counsel for "rude and insulting" behavior toward the judge presiding at the criminal trial of John Suratt for the assassination of President Lincoln. In his opinion for the Court, Justice Field stated that judicial immunity "obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, 'a deep root in the common law.'" 80 U.S. at 347, citing Yates v. Lansing, 5 Johns. 282, 291, 1810 WL 1044 (N.Y. Sup 1810).
For the notion that the judge's motive in ruling is irrelevant, Justice Field cited Lord Coke's opinion in Floyd and Barker, 1608, 12 Coke, 25.

## [FN3]
**Policy underpinnings for immunity**

Immunity is intended to allay "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler v. Pachtman, 424 U.S. 409, 423, 96 S. Ct. 984, 991, 47 L. Ed. 2d 128 (1976).
The Supreme Court has determined that certain government

officials require absolute immunity to enable them to function independently and effectively, without fear of intimidation or harassment. Lacey v. Maricopa County, 649 F.3d 1118, 1126 (9th Cir. 2011), reh'g en banc granted, 663 F.3d 1032 (9th Cir. 2011).

[FN4]
## Supreme Court refused to believe

Tenney v. Brandhove, 341 U.S. 367, 376, 71 S. Ct. 783, 788, 95 L. Ed. 1019 (1951).

## See also

The historically-recognized principle of judicial immunity applies in suits brought under § 1983 cases because "the legislative record gave no indication that Congress intended to abolish this long-established principle." Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 1104, 55 L. Ed. 2d 331 (1978), noted 1979, 27 U.Kan.L.Rev. 518, 1979 Wash.U.L.Q. 288.
Pierson v. Ray, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967) (in passing § 1983, Congress did not indicate an intention to abrogate common-law immunity).

## See

Eisenberg, Section 1983: Doctrinal Foundations and An Empirical Study, 1982, 67 Cornell L.Rev. 482, 491–504 (criticizing the Tenney decision).

[FN5]
## Factors as illuminated by history and structure of government

Appellate review of qualified-immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to or discovered by the district court. Elder v. Holloway, 510 U.S. 510, 512, 114 S. Ct. 1019, 1021, 127 L. Ed. 2d 344 (1994).
Nixon v. Fitzgerald, 457 U.S. 731, 747–748, 102 S. Ct. 2690, 2701, 73 L. Ed. 2d 349 (1982).
Imbler v. Pachtman, 424 U.S. 409, 421, 96 S. Ct. 984, 990, 47 L. Ed. 2d 128 (1976).

[FN6]
## Discussed in another section

See § 3573.2 at notes 39-61.

[FN7]
**Bivens claim"**

See § 3573.2 at notes 64-66.

[FN8]
**Immunity co-extensive**

"Although this case involves suits under both 1983 and Bivens, the qualified immunity analysis is identical under either cause of action." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696, 143 L. Ed. 2d 818 (1999).
Davis v. Scherer, 468 U.S. 183, 194 n. 12, 104 S. Ct. 3012, 3019 n. 12, 82 L. Ed. 2d 139 (1984).
Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

**See**

Note, Qualified Immunity in Section 1983 and Bivens Actions, 1992, 71 Texas L.Rev. 124.

[FN9]
**Spare the litigation itself**

Qualified immunity is "an immunity from *suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Thus, we have held that an order denying qualified immunity is immediately appealable even though it is interlocutory; otherwise, it would be "effectively unreviewable." 472 U.S. at 527, 105 S. Ct. 2806, 86 L. Ed. 2d 411. Further, "we repeatedly have stressed the iporance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Scott v. Harris, 127 S. Ct. 1769, 1774 n. 2, 167 L. Ed. 2d 686 (U.S. 2007) (emphasis original).
Immunity is not a mere defense to liability, but a privilege to be free from the burdens of litigation. Cochran v. Gilliam, 656 F.3d 300 (6th Cir. 2011).

"Because the defense provides immunity from suit, not just a defense from liability, the denial of a motion for summary judgment predicated on qualified immunity is an immediately appealable collateral order." Hopkins v. Bonvicino, 573 F.3d 752, 762 (9th Cir. 2009).

Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. Walter v. Pike County, Pa., 544 F.3d 182, 190 (3d Cir. 2008).

In Long v. Slaton, 508 F.3d 576, 579 (11th Cir. 2007), the court of appeals criticized the district judge for issuing a terse order denying the defendant's motion to dismiss. It quoted the order and said: "This kind of order is of no help to an appellate court. In addition, such a summary denial of qualified immunity does not clearly demonstrate that the district court had entirely taken to heart the Supreme Court's instruction to courts about the duty to treat seriously motions raising immunity and to grant qualified immunity at the earliest possible point in the litigation." 508 F.3d at 579 n. 5, citing Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) and Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

## Compare

In this regard, the Court seems to have changed its mind, at least with regard to cases involving qualified (as opposed to absolute) immunity. In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 992 n. 13, 47 L. Ed. 2d 128 (1976), the Court said that while absolute immunity "defeats a suit at the outset," qualified immunity "depends upon the circumstances and motivations Footnote coorupt: it is 96 sct 984, 990 n. 13.of [an official's] actions, as established by the evidence at trial.

### [FN10]
### Discussed elsewhere

See § 3573.2 at notes 49–59.

### [FN11]
### Immunity not transferable to private parties

Private persons who used replevin statute to seize plaintiff's property were not entitled to immunity. As private parties, they did not hold an office requiring them to exercise discretion. Wyatt v.

Cole, 504 U.S. 158, 168–169, 112 S. Ct. 1827, 1834, 118 L. Ed. 2d 504 (1992). See note 71 below.

**See also**

Though judge was entitled to immunity, private party with whom he acted was considered to have acted under color of state law and could be sued under § 1983. Dennis v. Sparks, 449 U.S. 24, 27–28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980).

[FN12]
**Absolute immunity available to limited number of actors**

"The Supreme Court has accorded absolute immunity to a limited range of government officials whose duties are deemed, as a matter of public policy, to require that protection to enable them to function without fear of undue interference or harassment." Mangiafico v. Blumenthal, 471 F.3d 391, 395 (2d Cir. 2006).

[FN13]
**Particular actions by particular persons** 

"In other words, the critical inquiry is not the official position of the person seeking absolute immunity, but the specific action for which that person seeks immunity." Mangiafico v. Blumenthal, 471 F.3d 391, 395 (2d Cir. 2006). Absolute immunity gives "public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities." Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987).

[FN14]
**Must demonstrate entitlement to absolute immunity**

"[Previous] decisions have also emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been 'quite sparing' in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." Burns v. Reed, 500 U.S. 478, 487, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991) (citations and internal quotations omitted).

"The burden to establish absolute immunity rests on the defendant who wishes to use it as a defense," and the presumption is that qualified, rather than absolute, immunity is sufficient to protect government officials. Lacey v. Maricopa County, 649 F.3d 1118, 1126 (9th Cir. 2011), reh'g en banc granted, 663 F.3d 1032 (9th Cir. 2011).
Official claiming absolute immunity bears burden of establishing that immunity is justified for the function in question. Heyde v. Pittenger, 633 F.3d 512, 517 (7th Cir. 2011).
Defendant bears the burden of showing that absolute immunity is warranted for the function in question, to overcome the presumption that qualified immunity affords sufficient protection. Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006).

### Burden of proof—qualified immunity

Concerning burden of proof in cases of qualified immunity, see notes 66–69 below.

[FN15]
### Stump case

435 U.S. 349, 356, 98 S. Ct. 1099, 1104, 55 L. Ed. 2d 331 (1978), noted 1979, 27 U.Kan.L.Rev. 518, 1979 Wash.U.L.Q. 288.

[FN16]
### Flawed by procedural errors

"A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." 435 U.S. 349, 359, 98 S. Ct. 1099, 1106 55 L. Ed. 331 (1978).
"[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever ...." Bradley v. Fisher, 80 U.S. 335, 347, 20 L. Ed. 646, 1871 WL 14737 (1871).
"Unless judges act completely outside all jurisdiction, they are absolutely immune from suit when acting in their judicial capacity. Even if judges act in error, with malice, or outside of their authority, they are subject to liability only when acting in the clear

absence of all jurisdiction. The scope of a judge's jurisdiction is broadly construed when relating to judicial immunity." John Chism Bail Bonds, Inc. v. Pennington, 656 F. Supp. 2d 929, 933 (E.D. Ark. 2009). Judges were entitled to immunity for order concerning setting bond for criminal cases, because setting bond is a judicial act. 656 F.Supp.2d at 933-934.

[FN17]
### Clear absence of all jurisdiction

Sparkman, 435 U.S. at 356-357, 98 S. Ct. at 1105, quoting Bradley v. Fisher, 80 U.S. at 351.
Pierson v. Ray, 386 U.S. 547, 553-554, 87 S. Ct. 1213, 1217-1218, 18 L. Ed. 2d 288 (1967).

### Motivation irrelevant

In 1869, the Supreme Court stated that judges are not responsible "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, and are done maliciously or corruptly." Randall v. Brigham, 74 U.S. 523, 19 L. Ed. 285, 1868 WL 11160 (1868).
Three years later, the Court rejected the notion that motivation was relevant by saying of the preceding quotation: "the qualifying words used were not necessary to a correct statement of the law." Bradley v. Taylor, 80 U.S. (13 Wall.) at 351. Thus the Court there said judges are not liable "even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 80 U.S. (13 Wall.) at 351. Moreover, "[n]or can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed." 80 U.S. (13 Wall.) at 347.
In cases since, the Court has indicated that the judge's motivation is irrelevant; the pivotal question is whether the judge's act was judicial in nature. See, e.g., Sparkman, 435 U.S. at 355-356, 98 S. Ct. at 1104.

### See

The court, in upholding judicial immunity, noted that although malice will not deprive a judge of absolute immunity, there was no

showing of malice on the facts of the case. Sadoski v. Mosley, 435 F.3d 1076, 1079 n. 2 (9th Cir. 2006), cert. denied, 547 U.S. 1192, 126 S. Ct. 2864, 165 L. Ed. 2d 896 (2006).

[FN18]
**No state law prohibited the judge**

"It is more significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court" from making the order. Sparkman, 435 U.S. at 358, 98 S. Ct. at 1105.

[FN19]
**Clear absence of jurisdiction**

Chrzanowski v. Assad, 275 Fed. Appx. 661 (9th Cir. 2008). Although state-court judge acted beyond jurisdiction in extending criminal sentence, he did not act in absence of all jurisdiction and therefore was entitled to absolute judicial immunity. Sadoski v. Mosley, 435 F.3d 1076, 1079 (9th Cir. 2006), cert. denied, 547 U.S. 1192, 126 S. Ct. 2864, 165 L. Ed. 2d 896 (2006).

[FN20]
**Forfeits immunity**

"For a judge to assume authority outside the geographic bounds of his office is the kind of clear judicial usurpation which cannot be condoned by any grant of immunity," Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1132, 103 L. Ed. 2d 193 (1989).

[FN21]
**Claims of absolute immunity for acts in judicial capacity**

A judge is judicially immune from suit for allegedly ordering a police officer to bring an attorney before the judge even though the judge allegedly directed the officers to carry out the order with excessive force. Mireles v. Waco, 502 U.S. 9, 12–13, 112 S. Ct. 286, 288, 116 L. Ed. 2d 9 (1991).
Pierson v. Ray, 386 U.S. 547, 553–554, 87 S. Ct. 1213, 1217–1218, 18 L. Ed. 2d 288 (1967).
Bradley v. Fisher, 80 U.S. 335, 20 L. Ed. 646, 1871 WL 14737 (1871).
Activities of board of review in reviewing property assessment were quasi-judicial in nature, and members of the board were

entitled to absolute immunity. Heyde v. Pittenger, 633 F.3d 512, 517–521 (7th Cir. 2011). Court found unpersuasive plaintiff's argument that board, in failing to confine its process to materials submitted by the parties, acted in an investigatory capacity. 633 F.3d at 517–519.

Doctrine of judicial immunity barred plaintiff's claim against federal district judge who sua sponte dismissed plaintiff's complaint. Judge did not act in clear absence of jurisdiction and thus was entitled to absolute immunity. Wagenknecht v. U.S., 509 F.3d 729, 734 n. 5 (6th Cir. 2007). "A judge who acts in excess of his jurisdiction is immune from suit, whereas a judge who acts in a clear absence of any jurisdiction might not be immune from suit." 509 F.3d at 734 n. 5.

Litigant may challenge judicial orders only by appeal, and not by suing the judge. In re Thomas, 508 F.3d 1225, 1227 (9th Cir. 2007), cert. denied, 128 S. Ct. 1654, 170 L. Ed. 2d 362 (U.S. 2008).

State court judge had absolute immunity because actions were taken in judicial capacity. Maness v. District Court of Logan County-Northern Div., 495 F.3d 943, 944–945 (8th Cir. 2007).

State judge is immune from damages and injunctive claims. Azubuko v. Royal, 443 F.3d 302, 303–304 (3d Cir. 2006).

Although judge acted in excess of his jurisdiction when he resentenced criminal defendant to longer period of incarceration, he did not act in the clear absence of all jurisdiction. Judge was therefore entitled to absolute immunity. The judge retained subject matter jurisdiction over the plaintiff's conviction after she began serving the sentence and under Nevada law had jurisdiction to modify the sentence. Although on the facts of the case the judge did not have power to extend the term of incarceration, the act was judicial. Sadoski v. Mosley, 435 F.3d 1076, 1079 (9th Cir. 2006), cert. denied, 547 U.S. 1192, 126 S. Ct. 2864, 165 L. Ed. 2d 896 (2006).

State court judge was entitled to judicial immunity from equitable claim. Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996) (per Birch, J.).

Bankruptcy judges are absolutely immune from liability under the Bivens doctrine for damages allegedly resulting from their judicial acts and court clerks are entitled to absolute quasi-judicial immunity for their alleged failure to give proper counseling and notice. Mullis v. U.S. Bankruptcy Court for Dist. of Nevada, 828 F.2d 1385 (9th Cir. 1987).

Litigant's action against judge of court of common pleas and

referee for compensatory and punitive damages arising out of refusal of referee, on instructions from judge, to allow plaintiff to proceed in action to set aside child custody award unless she was represented by a lawyer was barred by the doctrine of judicial immunity. Littleton v. Fisher, 530 F.2d 691 (6th Cir. 1976).
"Plaintiffs maintain that Isidoro's disbarment was unconstitutional and that federal and state courts should not have subsequently recognized the disbarment order when determining whether to revoke his license to practice in their jurisdictions. As the D.C. Circuit has already held previously, Plaintiffs' claims against the judicial Defendants plainly concern actions taken within their judicial capacities, and Plaintiffs have made no colorable argument that the judicial Defendants acted in the complete absence of jurisdiction. Indeed, the D.C. Circuit has already **held** to the contrary." Rodriguez v. Shulman, 844 F. Supp. 2d 1, 11 (D.D.C. 2012).
Plaintiffs, consisting of prisoners and pretrial detainees, sued various defendants, alleging that district attorney's plea bargaining policy was unconstitutional. The **judge** who accepted the plea bargains was absolutely **immune** because accepting plea bargains is a judicial act. Miller v. County of Nassau, 467 F. Supp. 2d 308, 312-313 (E.D. N.Y. 2006). "To determine whether a **judge** is entitled to absolute **immunity** the Court must examine the nature of the responsibilities at issue." 467 F.Supp.2d at 312.
State-court **judge** who presided over housing code enforcement and contempt proceedings against property owners was absolutely **immune** from owners' § 1983 claim that **judge** conspired with others to violate owners' Fourth Amendment and other rights. Alleged acts were within judicial capacity and therefore protected. Marcello v. Maine, 464 F. Supp. 2d 38, 41-43 (D. Me. 2006).
Even if federal **judges** were **not** exempt from claims under § 1983 because **not** acting under color of state law, they were entitled to absolute **immunity** because "they were acting within their judicial capacity in a matter over which they clearly had proper jurisdiction." Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit **Judges**, 248 F. Supp. 2d 17, 25 (D.D.C. 2003).
Municipal **judge** did **not** act in complete absence of jurisdiction, so as to lose the benefit of absolute judicial **immunity**, when the court placed contemnor appearing for an indictment on charges of harassing other **judges** in contempt of court for inappropriate courtroom conduct, even though there was a state-court directive calling for cases involving **judges** to be referred to the assignment **judge** in the county. Figueroa v. Blackburn, 39 F. Supp. 2d 479